IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID ROBERT HICKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-224-E |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

O R D E R

AND NOW, this 29th day of September, 2016, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 10) filed in the above-captioned matter on February 8, 2016,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 8) filed in the above-captioned matter on January 6, 2016,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I. **Background**

Plaintiff David Robert Hickman filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, and for Supplemental Security

1

Income under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f, on April 30, 2010, claiming that he became disabled on November 6, 2009, due to diabetes, seizures, neuropathy, fibromyalgia, depression, and intestinal problems.[1] (R. 227-33, 234-40, 273). After being denied initially on August 10, 2010, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on August 16, 2011. (R. 29-51, 125-29, 131-35, 150-52). In a decision dated September 12, 2011, the ALJ denied Plaintiff's request for benefits. (R. 101-114). The Appeals Council granted review of the ALJ's decision on March 16, 2013, and issued an order vacating the ALJ's decision and remanding the matter to an ALJ for a new hearing and re-consideration. (R. 120-22).

A new hearing was held on August 26, 2013. (R. 52-94). On November 20, 2013, a different ALJ issued a decision denying Plaintiff's claim for benefits. (R. 15-26). On July 9, 2015, the Appeals Council declined further review of the case. (R. 1-3). Having exhausted his administrative remedies, Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

---

[1] As will be further discussed below, Plaintiff later also alleged to be disabled due to injuries involving his right hand.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is

overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether

the claimant is suffering from a severe impairment.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a), 416.921(a).  If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits.  If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 416.920(d).  If a claimant meets a listing, a finding of disability is automatically directed.  If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work.  See 20 C.F.R. §§ 404.1520(e), 416.920(e).  The claimant bears the burden of demonstrating an inability to return to his or her past relevant work.  See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).  If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable

5

of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(g), 416.920(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

### III. **The ALJ's Decision**

In the November 20, 2013 decision upon remand, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through December 31, 2014. (R. 18). Accordingly, to be eligible for DIB benefits, Plaintiff had to establish that he was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claims for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of November 6, 2009. (R. 18). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had several severe impairments, specifically: diabetes mellitus, diabetic neuropathy, the residual effects of a neck fracture, and major depressive disorder. (R. 18). The ALJ found that

6

Plaintiff's alleged hand limitation did not qualify as a severe impairment. The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 18-20).

The ALJ found that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he can stand or walk for six hours in a typical workday; he can sit for six hours in a typical workday; he can lift 10 pounds occasionally and 3 to 5 pounds frequently; he requires a brief bathroom break of 2 to 3 minutes three times per day outside of regularly scheduled breaks; he can only occasionally do work that involves reaching with the right shoulder with the hand above shoulder level; he is limited to the performance of simple, routine, repetitive tasks requiring only simple work-related decisions; he is limited to incidental collaboration with coworkers and the public; he can collaborate with supervisors for thirty minutes during the workday; and he can have no exposure to dangerous machinery or heat. (R. 20-24). Based on this RFC, Plaintiff established that he is incapable of returning to his past employment; therefore, the ALJ moved on to Step Five. (R. 24).

At Step Five, the ALJ used a vocational expert ("VE") to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform. The VE

7

testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including surveillance system monitor, mail sorter clerk, and clerical sorter. (R. 25). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 25-26).

## IV. Legal Analysis

Plaintiff's primary argument is that the ALJ erred in failing to include in his RFC any restrictions related to his right hand limitations. The Court agrees and will remand the case for further consideration of Plaintiff's right hand injury and its impact on the formulation of Plaintiff's RFC.

As noted, this case had previously been remanded back to an ALJ by the Appeals Council. Between the first and second ALJ decisions, on July 12, 2012, Plaintiff was involved in an automobile accident causing damage to his neck and spine, which impacted, among other things, his dominant right hand. (R. 975). Although the ALJ, on remand, considered evidence of Plaintiff's hand injury, he found it not to constitute a severe impairment at Step Two of the sequential analysis. (R. 18). In so finding, the ALJ cited to a record indicating that Plaintiff had only mild fine fingering limitation and that his gross handling was intact. (R. 18). He did not include any

restrictions regarding Plaintiff's right hand in the RFC.[2] (R. 20).[3] However, the ALJ failed to account for the substantial body of other evidence regarding Plaintiff's right hand injury contained in the record.

The one piece of evidence to which the ALJ cites in dismissing Plaintiff's hand issues is an August 20, 2012 treatment note from Plaintiff's treating neurosurgeon, William Diefenbach, M.D. (R. 940). While this note does indicate that Plaintiff is regaining function in his hands and feels that he is improving,[4] other evidence in the record tells a different

---

[2] RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). See also 20 C.F.R. §§ 404.1545(a), 416.945(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705). See also S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

[3] The RFC does contain a restriction regarding Plaintiff's reaching with his right shoulder but does not address Plaintiff's issues with his right hand.

[4] Even the exhibit to which the ALJ cites references continued weakness in Plaintiff's right hand. (R. 940).

9

story. Plaintiff points out, for example, that Dr. Diefenbach himself, in a September 15, 2013 report, indicated that Plaintiff has numbness in his right upper extremity and severe weakness and lack of function in his dominant right hand. (R. 976). Although the ALJ did address the September 15 report in his decision, he did so only in regard to Dr. Diefenbach's ultimate conclusion that Plaintiff is disabled. (R. 23-24). Plaintiff does not dispute that a physician's statement that a claimant is "disabled" or "unable to work" is not binding on the ALJ, as the opinion as to whether a claimant is disabled is reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); Griffin v. Commissioner of Soc. Sec., 305 Fed. Appx. 886, 891 (3d Cir. 2009). Accordingly, the ALJ was not required to accept the opinion of Dr. Diefenbach to the extent that he opined merely that Plaintiff was disabled.

However, the ALJ was not at liberty to ignore Dr. Diefenbach's findings regarding Plaintiff's medical condition. His statement in the September 15 report about Plaintiff's hand function was not an opinion, but rather part of his findings as one of Plaintiff's treating physicians. Indeed, he was not opining as to Plaintiff's RFC, but reporting his clinical observations in discussing the numbness, weakness, and lack of function in Plaintiff's right hand. The ALJ appears to dismiss these findings as merely reporting the subjective complaints of

Plaintiff, but fails to explain why Dr. Diefenbach's statements should be treated as such, especially in light of his treating relationship with Plaintiff.

Moreover, the record contains other evidence indicating possible functional limitations regarding Plaintiff's ability to use his right hand. Other records from Dr. Diefenbach from after the August 20, 2012 treatment note upon which the ALJ relied demonstrate continued problems with Plaintiff's right hand. For instance, on August 13, 2013, he noted that Plaintiff "has had good return to function" from his accident, "but still with severe disability and lack of function in his dominant right upper extremity." (R. 942). Furthermore, records from Dr. Heath Fallin, M.D. of the Pain Management Center at Meadville Medical Center from April 8, 2013 discuss pain and numbness in Plaintiff's right hand. (R. 828). Also, records from Healthsouth Rehabilitation Hospital from shortly before August of 2012 show substantial weakness in Plaintiff's right hand. (R. 983). Finally, although the ALJ did make mention of Plaintiff's physical therapy records from Meadville Medical Center from August of 2013, he did not discuss the records fully in regard to Plaintiff's right hand. He does mention, for example, that Plaintiff's grip strength is 43 pounds in his right hand (R. 9, 953), he does so only in the context of discussing Plaintiff's neck injury and does not consider the

11

evidence in regard to Plaintiff's hand condition. Further, he does not discuss that Plaintiff's grip strength in his dominant right hand is significantly less than the grip strength in his left hand (68 pounds). (R. 953). He also does not mention the finding, in the same report, that Plaintiff had decreased fine motor coordination in his right hand. (Id.).

The ALJ's failure to address the evidence potentially contradicting his finding that Plaintiff had no hand limitation requires remand. Where, as here, there is potentially conflicting evidence in the record, the ALJ must explain which evidence he accepts and rejects and the reasons for his determination. See Cruz v. Commissioner of Soc. Sec., 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)). See also Fargnoli, 247 F.3d at 42. The findings of Dr. Diefenbach and others must be considered by the ALJ in considering the limitations caused by Plaintiff's hand injury.

The Court notes that, not only did the ALJ not include any restrictions in Plaintiff's RFC to account for his right hand issues, he dismissed the condition out of hand as not even meeting the low threshold of Step Two. This step is a de minimus screening device to dispose of groundless claims. See Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).

It is hard to see how Plaintiff's pain, numbness, and weakness in his right hand did not at least reach de minimus status.

It is true that the mere fact that the ALJ did not include Plaintiff's right hand limitations as a severe impairment does not in itself warrant remand.  The Step Two determination as to whether a claimant is suffering from a severe impairment is a threshold analysis requiring the showing of only one severe impairment.  See Bradley v. Barnhart, 175 Fed. Appx. 87, 90 (7th Cir. 2006).  In other words, as long as a claim is not denied at Step Two, it is not generally necessary for the ALJ specifically to have found any additional alleged impairment to be severe.  See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); Lee v. Astrue, 2007 WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12, 2007); Lyons v. Barnhart, 2006 WL 1073076, at *3 (W.D. Pa. March 27, 2006).  Since Plaintiff's claim was not denied at Step Two, it really does not matter whether the ALJ correctly or incorrectly found Plaintiff's right hand condition to be non-severe.

What does matter is that he failed to consider all of the evidence regarding Plaintiff's right hand in determining Plaintiff's functional capacity, because even if an impairment is non-severe, it may still affect a claimant's RFC.  In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments,

13

even those that are not 'severe.'" S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *5 (July 2, 1996). See also 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." S.S.R. 96-8p at *5. Accordingly, regardless of whether the ALJ were to find Plaintiff's right hand injury to be severe, he still must consider what impact it may have on Plaintiff's RFC. As noted, there is evidence in the record that potentially conflicts with the ALJ's finding that Plaintiff's right hand causes him no functional limitations that the ALJ has not addressed.

The Court takes no position as to what functional limitations may need to be included in the RFC to account for Plaintiff's right hand injury. Rather, it is the need for further discussion of all of the evidence pertaining to this condition that warrants remand in this case.[5]

## V. Conclusion

In short, the record does not permit the Court to determine whether the findings of the ALJ regarding Plaintiff's right hand injury and its impact on Plaintiff's RFC are supported by

---

[5] On remand, the ALJ should also consider what impact, if any, this evidence has on Plaintiff's credibility in regard to his subjective complaints regarding his right hand.

14

substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case.  The Court hereby remands this case to the Commissioner for reconsideration consistent with this Order.

                                                <u>s/Alan N. Bloch</u>
                                                United States District Judge

ecf:     Counsel of record